**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CENTURY 21 REAL ESTATE, LLC,

                       Plaintiff,

       - against -

RARITAN BAY REALTY, LTD., et al.,

                     Defendants.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 07-1455 (CPS) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiff Century 21 Real Estate, LLC ("Century 21") filed this action on March 13, 2007, against defendants Raritan Bay Realty, Ltd. ("RBR") and RBR officers Diane Rivela and Frank Rivela. Its Complaint asserts claims for breach of contract and the unauthorized use of Century 21's registered trademarks in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*. Docket Entry ("DE") 12-1 (Complaint). The defendants never responded to the Complaint. On October 31, 2007, at Century 21's request, DE 25, the Clerk noted the defendants' default. Order dated October 31, 2007. Century 21 now seeks a default judgment, DE 26, and the Honorable Charles P. Sifton, United States District Judge, has referred the matter to me for a report and recommendation. DE 27. I now make my report and, for the reasons set forth below, respectfully recommend that the court enter a default judgment against the defendants on the Lanham Act claim, and that it award Century 21 thrice the lost profits resulting from the violation (to be determined by an audit to which RBR should be required to submit), injunctive relief, and litigation costs including reasonable attorneys' fees in the amount of $10,644.84. However, because Century 21 has failed to prove any damages on the contract claims, I respectfully recommend that the court award only nominal damages in the amount of one dollar per claim, for a total of four dollars, on those causes of action.

I.     Background

Century 21 operates a franchise system that offers real estate brokerage services throughout the country.  It provides training, resources, and other types of support to its franchisees, and permits them to use its trademarks, service marks, and logos (collectively, the "Century 21 Marks") in order to clearly identify the origin of their services.  Complaint ¶¶ 8, 13; DE 29-7 (Declaration of Beth Klepar ("Klepar") [Century 21's Vice-President of Financial Services and Audit]) ("Klepar Dec.") ¶ 5 & Ex. A (copy of Century 21 Real Estate Franchise Agreement) ("Franchise Agreement") § 6.  The Century 21 Marks are registered with the United States Patent and Trademark Office ("USPTO") and Century 21 retains the exclusive right to use and license them.  Complaint ¶¶ 9, 14; Klepar Dec. ¶¶ 3, 5.  Century 21 has expended substantial time, effort, and money developing goodwill in its marks, and endeavoring to cause consumers to associate them exclusively with Century 21 services.  Complaint ¶¶ 9, 14; Klepar Dec. ¶ 5.

On September 24, 1996, Century 21 executed a Franchise Agreement with RBR, whereby the latter agreed to operate a Century 21 franchise in Staten Island, New York for ten years, beginning October 1, 1996.  Franchise Agreement § 2.  The agreement required RBR to make certain payments to Century 21 (including "royalty fees" and contributions to Century 21's National Advertising Fund ("NAF")), and to keep records and reports of its transactions.  Franchise Agreement §§ 8, 9, 11B(iii).[1]  Century 21 retained the right to terminate the agreement

---

[1]  According to the Franchise Agreement, RBR was required to pay Century 21 a "royalty fee" equal to six percent of the gross revenue from certain transactions, immediately upon receipt of the revenue from those transactions.  Franchise Agreement § 8.  RBR was also required to submit a monthly NAF contribution, subject to certain minimum and maximum amount limitations.  *Id.* § 9.  If RBR failed to submit either payment on time, the delinquent payment accrued interest at a specified rate; in the case of delinquent NAF contributions, Century 21 also had the option of imposing a penalty equal to ten percent of the amount owed.  *Id.* §§ 8B, 9B.

if RBR failed to satisfy any of its contractual obligations. *Id.* § 17B. In the event that Century 21 exercised that right, RBR would be required promptly to pay all sums then owing, to stop using the Century 21 Marks and to discontinue all advertising as a Century 21 franchise. *Id.* § 18A-H. Both Diane Rivela and Frank Rivela personally guaranteed the Franchise Agreement. *See* Franchise Agreement Ex. B (Guarantee of Payment and Performance) ("Personal Guarantee").

On May 9, 2006, Century 21 sent a letter addressed to all three defendants notifying them that they had materially breached the Franchise Agreement by failing to submit certain payments and reports. *See* Klepar Dec. Ex. B. The letter warned that absent curative action by June 9, 2006, Century 21 would terminate their franchise. *Id.* The defendants did not respond, and Century 21 soon made good on its word; on July 21, 2006, Century 21 sent the defendants a second letter advising that it was terminating the Franchise Agreement effective July 28, 2006, and that they owed fees in the amount of $20,231.00. *See* Klepar Dec. Ex. C. The letter also stated that, pursuant to section 18 of the Franchise Agreement – a copy of which was attached to the letter – the defendants must immediately stop using the Century 21 Marks. *Id.* The defendants again failed to respond, and, according to Century 21, continued to use the Century 21 Marks. *Id.* ¶ 15. Century 21 therefore sent the defendants a third and final letter – this time through its attorneys – demanding that they immediately stop using the Century 21 Marks and pay all outstanding fees by January 22, 2007. *Id.* Ex. D (letter dated January 12, 2007). Counsel for Century 21 explicitly warned that in the event the defendants failed to do so, Century 21 would take action to protect its rights, including seeking to enforce the Personal Guarantee. *Id.*

Century 21 filed the instant action on March 13, 2007, alleging claims under both federal and state law.[2]  Specifically, it asserted a single claim under the Lanham Act based on the defendants' continued use of the Century 21 Marks after the franchise's termination, as well as four state law contract claims based on the defendants' failure to satisfy various obligations under the Franchise Agreement.  *See* Complaint ¶¶ 35-45 (Lanham Act claim); Complaint ¶¶ 46-65 (contract claims); 15 U.S.C. § 1114(a) (Lanham Act Section 34(a), prohibiting trademark infringement); *id.* § 1125(a) (Lanham Act Section 43(a), prohibiting, *inter alia*, false designation of origin).  In alleging the Lanham Act violation, Century 21 further contends that the defendants' continued use of the Century 21 Marks is likely to confuse consumers as to the origin of their real estate services and also that the defendants are diluting the distinctiveness of the Century 21 Marks – by both diminishing their ability to serve as a unique identifier of Century 21's services and disparaging their reputation – in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) (as amended effective October 6, 2006, the Trademark Dilution Revision Act). Complaint ¶ 41; Klepar Dec. ¶ 18.

Shortly after filing the Complaint, Century 21 moved for a preliminary injunction to prohibit the defendants from using the Century 21 Marks pending trial.  *See Century 21 Real Estate LLC v. RBR Realty Ltd.*, docket no. 07-CV-2105 (CM), DE 4 (S.D.N.Y. Mar. 19, 2007); Federal Rule of Civil Procedure 65(a).  At that point, the defendants had taken some steps toward disassociating themselves from Century 21, but not enough to satisfy the Franchise Agreement,

---

[2]  Century 21 originally filed its Complaint in the Southern District of New York.  *See Century 21 Real Estate LLC v. RBR Realty Ltd.*, docket no. 07-CV-2105 (CM) (S.D.N.Y.).  Because venue was not properly laid in that district, the court transferred it to this one, where it was received on April 3, 2007.

or Century 21. *See* DE 18. Indeed, Century 21 presented evidence in support of its request for a preliminary injunction that as of two days before the injunction hearing, RBR was continuing to display the Century 21 logo on the exterior of its office building and was including the Century 21 Marks in some of its signs and newspaper advertisements. *See* DE 18; DE 19 at 3. The defendants never responded to Century 21's motion, and on May 9, 2007, Judge Sifton granted the preliminary injunction. *See* DE 19.

Five months later, the defendants had still failed to appear. On October 30, 2007, nearly eight months after serving the Complaint on the defendants, Century 21 petitioned the Clerk to enter their default. DE 25. The Clerk did so the next day. Order dated October 31, 2007. Just over one month later, Century 21 filed the instant motion for default judgment. DE 26. On January 4, 2008, Judge Sifton referred the matter to me for a report and recommendation. Shortly after receiving the referral, I directed Century 21 to submit any written materials in support of its request for damages and other relief by February 6, 2008; I also afforded Century 21 the opportunity to present witnesses in support of its motion. Order dated January 16, 2008. Century 21 filed a memorandum of law supported by factual declarations with exhibits, *see* DE 29 ("Memo."), but did not request an opportunity to present live testimony. It now seeks the following forms of relief: an unspecified amount of damages on its Lanham Act claim; "at least" $23,309.00 (plus pre-judgment interest) in damages on the contract claims; an injunction prohibiting the defendants from using the Century 21 Marks; an audit of RBR's books and records; and $27,073.88 in attorneys' fees. *See* Memo. at 2, 14-15.

II.     Discussion

A.     The Effect Of The Defendants' Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

However, the fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992) (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Communications, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Hughes*, 449 F.2d at 63). Accordingly, before considering the issue of damages as to each cause of action, I first examine whether the Complaint successfully states a claim for relief.

6

B.    The Lanham Act Claim

  1.    Liability

    a.    Generally – Liability Of Corporate Defendant RBR

The Lanham Act was designed to make "'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in ... commerce against unfair competition.'"  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). A plaintiff can prevail on a claim for trademark infringement or false designation of origin if it shows that the plaintiff owns a valid trademark, and that the defendant's use of that trademark is likely to cause confusion regarding the source of the relevant product or services.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) (noting that the same analysis applies to claims under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively); *GMA Accessories, Inc. v. Croscill, Inc.*, 2008 WL 591803, at *3 n.2 (S.D.N.Y. Mar. 3, 2008) ("The legal standards governing § 1114(1)(a) and § 1125(a) claims are identical.").

Courts evaluate the latter element – likelihood of confusion – by considering the eight "*Polaroid* factors."  *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  Those factors are:  (1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.  *Id.*; *Louis Vuitton Malletier*, 454 F.3d at 116-117.  No single factor is dispositive – the court's task is

to weigh them with an eye toward the ultimate question of whether consumers are likely to be confused. *Brennan's Inc. v. Brennan's Rest.*, 360 F.3d 125, 130 (2d Cir. 2004).

Applying the relevant law to the circumstances of this case, I conclude that Century 21's Complaint and the defendants' default together suffice to establish Lanham Act claims for both trademark infringement and false designation of origin. First, I accept as true Century 21's allegation that its marks are on the principal register of the USPTO, Complaint ¶ 9; Klepar Dec. ¶¶ 3-4, notwithstanding Century 21's failure to provide documentary proof of those registrations. Second, Century 21 has clearly demonstrated the defendants' unauthorized use of the Century 21 Marks. Regardless of the merits of the separate breach of contract claims discussed below, the term of the Franchise Agreement expired on September 30, 2006, and Century 21 has demonstrated that the defendants continued to use the Century 21 Marks well after that date. *See* DE 18; DE 19 at 3. Finally, as discussed below, the *Polaroid* factors weigh heavily in Century 21's favor, compelling the conclusion that consumers are likely to be confused by RBR's use of the Century 21 Marks.

As to the first *Polaroid* factor, the Century 21 Marks are presumed to be strong by virtue of being registered. *See Rolex Watch U.S.A., Inc. v. Jones*, 2000 WL 1528263, at *2 (S.D.N.Y. Oct. 13, 2000) (citing *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 393 n.6 (2d Cir. 1995)). Moreover, Century 21 has devoted substantial time and resources to developing goodwill in its marks and to causing consumers to associate them exclusively with Century 21's real estate brokerage services. Complaint ¶ 14; Klepar Dec. ¶ 5. As to similarity, the marks at issue are identical – the defendants have simply refused to stop using the actual Century 21 Marks despite termination of their franchise. The marketplace factors also favor Century 21; the

parties offer the same basic product (real estate brokerage services) and RBR continues to operate out of the same location it occupied as a Century 21 franchisee. Complaint ¶ 30; Klepar Dec. ¶ 17. Finally, the defendants' bad faith is manifest: the Franchise Agreement explicitly prohibits RBR from using the Century 21 Marks or otherwise holding itself out as a Century 21 franchisee once the agreement is terminated, and RBR's apparent refusal to adhere to those terms suggests an intent to capitalize unfairly on Century 21's reputation.

In short, consumers are likely to assume that RBR continues to operate as a Century 21 franchise, yet Century 21 can no longer control the quality of services the defendants are providing. Century 21 has thus made the showing necessary to prevail on a claim for either trademark infringement or false designation of origin, and I therefore respectfully recommend that the court find RBR liable on the Complaint's first cause of action.

b.     <u>Individual Liability Of Corporate Officers</u>

An individual officer can be held personally liable for a corporation's trademark infringement and unfair competition under the Lanham Act if the officer is a "moving, active conscious force behind [the corporation's] infringement." *Bambu Sales, Inc. v. Sultana Crackers*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (quoting *Polo Fashions, Inc. v. Branded Apparel Merch.*, 592 F. Supp. 648 (D. Mass. 1984)). Demonstrating that the officer "authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability." *Id.* at 913 (internal punctuation and quotation marks omitted); *see also Cartier, a Div. of Richemont N. Am., Inc. v. Samo's Sons, Inc.*, 2005 WL 2560382, at *10 (S.D.N.Y. Oct. 11, 2005) (finding individual defendant officer personally liable on trademark infringement claims on the basis of his responsibility for making purchasing

decisions). Moreover, a defendant's belief that the products at issue were genuine and non-infringing is "irrelevant" to the disposition of a Lanham Act claim for trademark infringement. *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) (stating that "[i]t is well established that wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and that good faith is no defense").

Century 21's well-pleaded allegations and supporting evidence ultimately suffice to establish the personal liability of each of the individual defendants in this case for trademark infringement under the Lanham Act – although Century 21 has made arriving at that conclusion needlessly difficult. Indeed, Century 21's default motion and accompanying submissions do not address individual liability in the context of the Lanham Act at all. Despite that significant shortcoming, a thorough review of the record compels the conclusion that each of the individual defendants was a "moving, active conscious force behind" RBR's infringement. *Bambu Sales*, 683 F. Supp. at 913.

Century 21 alleges that, following termination of the Franchise Agreement, RBR "*and the Guarantors* [*i.e.*, the individual defendants] have continued to use the Century 21 Marks in connection with their real estate brokerage services ... [and] ... have continued to hold themselves out as a Century 21 Franchise..." Complaint ¶¶ 33, 34 (emphasis added). The record amply supports those allegations with respect to the individual defendants. Pursuant to the Franchise Agreement both individuals agreed personally to manage and supervise the business. *See* Franchise Agreement § 11B(i)(c) ("...Franchisee agrees that at all times during the term of the Agreement each officer and director of the corporation ... shall engage in the management and/or supervision of the Franchise operation."); *id.* § 30E (same). The two individual defendants are

RBR's only shareholders and the only corporate officers with supervisory responsibilities. Franchise Agreement §§ 30B, 30E. That Century 21 specifically directed each of its letters regarding termination of the franchise and the defendants' attendant obligations to Frank and Diane Rivela is further evidence that both individuals had a direct hand in the acts of infringement at issue here. Klepar Dec. Exs. B-D. I therefore respectfully recommend that the court find both individual defendants personally liable for RBR's Lanham Act violations.

2. Damages

The defendants' default does not relieve Century 21 of its burden of proving its damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. Century 21 seeks "at least" $23,309.04 in monetary damages, injunctive relief, an audit of RBR's books and records, and $27.073.88 in attorneys' fees and costs. In support of its request, Century 21 has submitted a memorandum of law; declarations from both its counsel and a Century 21 corporate officer; a copy of the Franchise Agreement; and copies of a series of three letters that Century 21 sent to the defendants regarding termination of their franchise. DE 29. I afforded Century 21 an opportunity to present witnesses in support of its motion, but it declined. I therefore make the instant recommendations on the basis of the submitted documents. *See Transatlantic Marine Claims Agency*, 109 F.3d at 111; *Action S.A.*, 951 F.2d at 508.

a.     <u>Monetary Damages</u>

Pursuant to section 1117(a) of the Lanham Act, Century 21 seeks to recover both the defendants' profits from their unauthorized use of the Century 21 Marks, in an amount to be determined, and also an unspecified amount of damages to compensate it for its own losses. Complaint ¶ 45; Memo at 11-12; *see* 15 U.S.C. § 1117(a) (providing for such damages). Century 21 further asks that the court treble any award to reflect the defendants' bad faith. Complaint ¶ 45; Memo at 11-12; 15 U.S.C. §§ 1117(a)-(b). For the reasons explained below, I recommend that the court award damages representing thrice the amount of RBR's profits (in an amount to be determined by an audit of RBR's books and records), but that it decline to award compensatory damages. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) ("The statute's invocation of equitable principles as guideposts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief.").

i.     <u>The Defendants' Profits</u>

Century 21 may recover the profits that the defendants enjoyed as a result of their Lanham Act violation, but only upon a showing that the violation was willful. *See* 15 U.S.C. § 1117(a); *Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276, 282 n.28 (S.D.N.Y. 2007) (citing *Blue Coral, Inc.*, 968 F.2d at 1538). Century 21 has clearly met that burden. The defendants ignored Century 21's repeated demands, prior to the filing of the Complaint, that they stop using the Century 21 Marks. *See* Klepar Dec. Exs. B-D. Even after Century 21 filed its motion for a preliminary injunction, the defendants continued to hold themselves out to the

public, at least to some extent, as a Century 21 franchise. Those facts suffice to establish the defendants' bad faith.[3]

Having demonstrated willfulness, Century 21 must still establish the amount of RBR's profits to a reasonable certainty, which in turn requires them to prove the amount of RBR's sales. 15 U.S.C. § 1117(a). Century 21 is not in a position to do so now because the defendants' default has deprived them of discovery to which they would otherwise be entitled. As a result, Century 21 seeks an audit to determine the defendants' sales. Complaint ¶ 45; Memo. at 12. I conclude that such relief is appropriate. The Franchise Agreement requires RBR to maintain its books and records for at least three years following termination, and to allow Century 21 to conduct a final inspection and audit. Franchise Agreement § 18I. The defendants have nevertheless refused to submit to an audit since September 21, 2005. Complaint ¶ 61. I therefore respectfully recommend that the court order the defendants to cooperate in an audit of RBR's books and records and, within 30 days of completion of the audit, permit Century 21 to petition the court to amend its judgment to reflect any additional damages to which it may at that point be entitled.

---

[3] Arguably, Century 21 would not need to make any evidentiary showing to support its claim for damages, but could instead rely on the decisions that have held willfulness to be established by a defaulting defendant's failure to answer a complaint's allegation of willfulness. *See, e.g.*, *Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, 2007 WL 2403397, at *5 (E.D.N.Y. Aug. 20, 2007) (citing *Malletier v. Whenu.Com, Inc.*, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007) (citing *Rodgers v. Anderson*, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005); *Tiffany v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003))). Such reasoning appears to be in tension with the general rule that a default suffices to establish the allegations in a pleading that relate to liability but not those that relate to damages. As explained above, the defendants' liability here is established without regard to any allegation or showing of willfulness; the latter concept is relevant only to damages and should therefore not be susceptible to proof by means of default. Fortunately, the court need not resolve the legal question because the record includes evidence – beyond the Complaint's allegations and the default – that suffices to demonstrate willfulness. It is on that basis that I recommend the finding necessary to an award of RBR's profits.

## ii.    Compensatory Damages

Century 21 also seeks compensatory damages pursuant to 15 U.S.C. § 1117(a).  Here again it has not established the amount of its claimed losses to a reasonable certainty, but in this instance it cannot fairly lay the blame for that fact on the defendants.  In support of its request for compensatory damages, Century 21 offers only the conclusory allegation that it "has been damaged by Defendants' unauthorized use of its marks from July 28, 2006 to present."  Klepar Dec. ¶ 18.  Even crediting that allegation, it is an entirely insufficient basis upon which to craft a damages award.

To be sure, the defendants' default has deprived Century 21 of information that might otherwise have been available to it had the defendants participated in this litigation and satisfied their discovery obligations.  My recommendation that Century 21 be permitted to audit RBR's books and records is based at least in part on a recognition that information regarding the extent to which the defendants profited by using the Century 21 Marks after termination of their franchise is likely to be under the defendants' exclusive control.  But the same should not be true of information concerning the actual losses to date that Century 21 has suffered as a result of the defendants' unauthorized use of its marks.  Information about such losses (to the extent they will not in any event be covered by an award of RBR's profits) is uniquely available to Century 21 itself; if it has not presented any such information thus far, I must conclude that it is because there are no such losses or because Century 21 has declined to make the effort needed to vindicate its rights in this regard.  Either way, it has not been deprived of an opportunity to prove this category of damages by the defendants' default.  I therefore recommend that the court award Century 21 Lanham Act damages based solely on the defendants' ill-gained profits.

###                iii.        Treble Damages

Finally, Century 21 asks that the court treble any damages award that flows from the defendants' Lanham Act violations. The statute provides for that relief in the court's discretion anytime a defendant violates a right of a holder of a registered mark, *see* 15 U.S.C. § 1117(a), and mandates it in most cases of willful violations. *Id.* § 1117(b) (absent "extenuating circumstances", the court shall enter judgment for three times the amount of profits or damages, whichever is greater). I have already concluded that the defendants acted in bad faith by continuing to trade on Century 21's good name long after termination of their franchise, and now conclude that there are no extenuating circumstances that warrant denying Century 21 the relief that it seeks. For those reasons, I respectfully recommend that the court treble any eventual damages award that is based on the defendants' Lanham Act violations.[4]

_____

[4]  Although Century 21 does not address the issue directly, the Lanham Act does explicitly provide a mechanism for calculating damages where, as here, a prevailing plaintiff lacks the information needed to establish the losses and profits to which it would otherwise be entitled – provided the violation to be remedied involves "the use of a counterfeit mark[.]" 15 U.S.C. § 1117(c) ("In a case involving the use of a counterfeit mark ... the plaintiff may elect ... to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages...."). Although Century 21 makes no argument on this score, I agree with its apparent assumption that this case does qualify for an award of statutory damages notwithstanding the fact that the defendants' violations involve the use of genuine rather than ersatz Century 21 Marks. *See* Memo at 12 (citing a provision that makes trebling of damages mandatory in a case involving the intentional or knowing use of a counterfeit mark – albeit while omitting any mention of the latter requirement). That is because the Lanham Act defines "counterfeit" to include "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The defendants' use of the genuine Century 21 Marks after their rights as franchisees expired (either by virtue of the termination or by the expiration of the contract term) was therefore, by statutory definition, the use of counterfeit marks to the extent they created the erroneous perception that Century 21 remained the source of the services provided. However, while Century 21 would have been within its rights to seek statutory damages as an alternative to actual losses and profits, they have not elected to do so. The relief I recommend defers to the plaintiff's choice of remedies.

b.     Injunctive Relief

Century 21 asks the court permanently to enjoin the defendants, their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participate with them, from using the Century 21 Marks to market or promote their real estate brokerage services.  Century 21 further asks the court to order the defendants to notify the building manager at RBR's place of business (located at 6386 Amboy Road, Staten Island, New York) and any Internet web site or other listing that promotes RBR's real estate services under Century 21's name, to remove Century 21's name from all signs, advertisements and listings. Complaint ¶ 45; Memo. at 14-15.  Congress has made such relief available to "prevent the violation of any right of the registrant of a [registered trademark] or to prevent a violation under" section 1125(a).  *See* 15 U.S.C. § 1116(a).  Accordingly, Century 21 – having succeeded on the merits of its Lanham Act claim – is entitled to an injunction if it demonstrates that such relief is necessary to avoid irreparable harm and that it has no adequate remedy at law.  *L. & J.G. Stickley, Inc. v. Cosser*, 255 Fed. Appx. 541, 543 (2d Cir. 2007).  I conclude that Century 21 has made that showing, and therefore respectfully recommend that the court grant its request for a permanent injunction.

I have already concluded that by continuing to use the Century 21 Marks after termination of their franchise the defendants are likely to confuse consumers as to the source of RBR's real estate brokerage services; that conclusion suffices to establish irreparable harm.  *See Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC.*, 2008 WL 1795321, at *3 (E.D.N.Y. Apr. 10, 2008) (citing *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987)); *see also Sunward Electronics, Inc. v.*

16

*McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) (noting, in the context of a preliminary injunction, that "[t]here is a compelling need for injunctive relief especially when the case involves a former licensee because, after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder"). Moreover, Century 21 has demonstrated that the defendants are likely to continue their infringing conduct in the future. *See Collins v. Aztar Corp.*, 210 F.3d 354, 354 (2d Cir. 2000) (permanent injunctive relief will be granted only upon proof of the likelihood that consumers will be misled in the future). The defendants failed to respond to any of Century 21's letters demanding that they stop using the Century 21 Marks, *see* Klepar Dec. Exs. B-D; and they manifestly continued to use those marks even after the instant litigation began.

I therefore recommend that the court permanently enjoin the defendants from using the Century 21 Marks to market or promote their real estate brokerage services, and from otherwise holding themselves out as a Century 21 franchise. I further recommend that Century 21 be released from the preliminary injunction bond that it posted on May 14, 2007. *See* DE 21.

3.      Attorneys' Fees

A plaintiff who succeeds on a Lanham Act claim may seek an award of attorneys' fees under either of two statutory provisions. In cases of non-willful violations, the plaintiff is entitled to an award of such fees only in "exceptional cases[.]" 15 U.S.C. § 1117(a). However, where, as here, the defendants' violation is willful, the court must award such fees in the absence of "extenuating circumstances[.]" *Id*. § 1117(b). Accordingly, if the court adopts my recommendation that it find the defendants' violation to have been willful, it should also award Century 21 its reasonable attorneys' fees. Century 21 seeks such an award in the amount of

$27,073.88.  *See* DE 29-1 (Declaration of [plaintiff's counsel] Daniel K. Winters) Ex. D ("Winters Fee App.").

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended.  *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  The lodestar method, however, does not simply rely on any mechanical invocation of an attorney's claimed hours and rates.  Rather, a court considering a fee application must determine "what a reasonable, paying client would be willing to pay" in light of all the relevant circumstances of the case.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).[5]

District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award.  *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  I therefore proceed to examine the reasonableness of both the hourly rates at which Century 21's attorneys seek to be compensated and the number of hours for which they seek reimbursement.  As explained below, I conclude that the court should reduce each in calculating the fees for which Century 21 should be reimbursed.

---

[5]  In using the "lodestar" terminology, I recognize that its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness."  *Id*. at 190.  I use the term here only for ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*.  *See id*. at 190 n.4.

a. <u>Hourly Rates</u>

Century 21 asks for an award of fees based on the following hourly rates that their attorneys and others wish to charge them.

| <u>Name</u> | <u>Position</u> | <u>Rates</u> |
|---|---|---|
| Daniel K. Winters | Partner | $425, $480 |
| Zoe F. Feinberg | Associate | $365 |
| Jennifer A. Guidea | Associate | $345, $385 |
| J. Teig | New Associate | $275 |
| N. E. Ortiz | Paralegal | $210, $230 |
| J. B. Castro | Paralegal | $180 |
| M. D. Pellis | "Staff" | $215 |
| E. Green | "Other" | $110, $120 |

Winters Fee App. at 23.  Century 21 has provided no explanation for the variations in certain of the professionals' rates; I infer from their billing records that its counsel decided to increase all hourly rates starting January 1, 2008.

A court seeking to determine the rate a paying client would be willing to pay should consider, among others, the twelve so-called *Johnson* factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  In doing so, the court should "bear in mind that a reasonable, paying

client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Having considered all of the circumstances in that light, I am not persuaded that a reasonable, paying client would be willing to pay any of the hourly rates listed above for the services that Century 21's attorneys have rendered here.

This is a relatively straightforward trademark infringement case; it does not present any novel or complex legal issues. Nevertheless, despite the fact that the defendants have done nothing to respond to any of Century 21's submissions, I conclude that Century 21 is not entitled to all of the relief it seeks. That recommended result is attributable to Century 21's failure to develop an adequate factual record – a task that would appear fairly to be the responsibility of Century 21's counsel. Viewed in that context, the request to compensate the several attorneys and paralegals who apparently worked on this case at rates that are significantly higher than the range of rates ordinarily approved in this district seems particularly unreasonable. *See King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners, $200 to $250 for senior associates, and $100 to $150 for junior associates, and finding $70 to be the customary hourly rate for paralegals).[6] So too is the request to reimburse the work of a "staff" member and

---

[6] Century 21 has provided no information about the extent of the experience in the legal profession of the personnel who worked on this case. Rather than let that lapse compound the deficiencies in the fee application, I have done the research needed to take judicial notice of the fact that, according to records of the New York State Unified Court System that are available to the public on its Internet web site, attorney Winters was admitted to practice in 1995 while all of the remaining attorneys have been admitted to practice within the last seven years: attorney Feinberg in 2004, attorney Guidea in 2001, and attorney Teig in 2008. Similarly, I have learned that M.D. Pellis ("Pellis"), who is not even described as an attorney but simply as "staff," is an attorney admitted to practice in 1992. *See* Attorney Directory – Attorney Search, http://iapps.courts.state.ny.us/attorney/AttorneySearch (last visited on July 22, 2008). Nothing about that information warrants an award based on unusually high hourly rates.

a person who does "other" unspecified work at the same rate as a paralegal assistant: no paying client would be content to pay such rates – much less the even higher rates that Century 21 seeks – without some explanation of what the "staff" and "other" designations connote and the qualifications of the incumbents in those positions. It may be that the persons described as "staff" and "other" provided valuable professional services that should be compensated at rates comparable to those of legal professionals – indeed that appears to be the case with respect to Pellis, who is in fact an attorney – but the papers before the court provide no way of knowing that. It is Century 21 that is responsible for that uncertainty, and therefore Century 21 that should generally bear the resulting burden. I therefore recommend that the court reimburse Century 21 for its attorneys' fees at the following reduced rates:

| Name | Position | Rate(s) |
|------|----------|---------|
| Daniel K. Winters | Non-equity partner | $375 |
| Zoe F. Feinberg | Associate | $250 |
| Jennifer A. Guidea | Associate | $250 |
| J. Teig | New Associate | $150 |
| N. E. Ortiz | Paralegal | $70 |
| J. B. Castro | Paralegal | $70 |
| M. D. Pellis | Staff | $200 |
| E. Green | Other | $25 |

b. Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). In lieu of contemporaneous time records, an applicant may submit "summaries ... accompanied by

affidavits stating that the summaries are accurate and based on contemporaneous records."
*Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367 (S.D.N.Y. 1995) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005).

Century 21 seeks reimbursement for a total of 68.1 hours of time expended by their counsel. *See* Winters Fee App. at 23. Having reviewed Century 21's submission in this regard I am satisfied that it sufficiently documents the number of hours its attorneys have billed. *See id.* But while the hours are adequately documented, I conclude that they are not entirely justified.

The amount of hours claimed for a case in which the defendants defaulted seems excessive. That is particularly true where, as here, the firm representing Century 21 has previously litigated at least one nearly identical case in this district on its behalf, and should have benefitted from at least some time savings as a result. *See Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, Slip Copy, 2007 WL 2403397 (E.D.N.Y. Aug. 20, 2007). In addition, I note that the attorneys did not spend their time exclusively on their successful pursuit of a judgment under the Lanham Act. Four of the five causes of action on which Century 21's attorneys spent their time were the breach of contract claims – and on those claims, as set forth below, I recommend the denial of relief precisely because of Century 21's failure to develop the record to satisfy the applicable legal requirements. For those reasons, taken together with my earlier analysis about the hourly rates, I recommend that the court significantly reduce the hours for which Century 21 may properly seek reimbursement.

One acceptable method for "trimming the fat" from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987). Under the circumstances of this case, I recommend reducing the number of hours for which Century 21 may demand reimbursement from the defendants by 40 percent, to a total of 40.86 compensable hours. Specifically, I propose reducing attorney Winters' hours from 12 to 7.2, reducing attorney Feinberg's hours from 25 to 15, reducing attorney Guidea's hours from 19 to 11.4, reducing attorney Teig's hours from 1.1 to .66, reducing the total paralegal hours from 9.7 to 5.82, reducing attorney Pellis's hours' from 0.3 to .18, and reducing the hours of E. Green ("Other") from 1 to 0.6.

c.     Total Reimbursement

For the reasons set forth above, I respectfully recommend that the court award a total of $9,857.40 in attorney's fees.

4.     Other Litigation Costs

Finally, Century 21 seeks an additional $3,390.38 in litigation costs, consisting of $401.20 in photocopying costs at a rate of ten cents per page, $36.24 in postage, $409.23 in filing fees, $20.24 in courier service fees, and $2,520.59 in process server and other service fees. Winters Fee App. at 23. The photocopying and postage costs are adequately described and documented and $350 of the filing fees is conclusively established by the docket; those costs should be awarded. *See Century 21 Real Estate LLC v. RBR Realty Ltd.*, docket no. 07-CV-2105 (CM), DE 1 (S.D.N.Y. Mar. 13, 2007). However, Century 21 has not adequately documented

any of the other costs; in particular, it has failed to provide a single receipt for any of the numerous occasions on which it employed an outside vendor.  For that reason, I respectfully recommend that the court award Century 21 no more than $787.44 in litigation costs.

C.    The Breach Of Contract Claims

1.    Liability

As a threshold matter, I note that the parties agreed to construe the Franchise Agreement under New Jersey law.  Franchise Agreement ¶ 25.  I therefore apply New Jersey contract law principles to Century 21's breach of contract claims.  Although that state has developed a detailed statutory scheme to govern franchise relationships, that regime does not apply where, as here, the franchisee is located outside of New Jersey.  *See New Jersey Franchise Practices Act*, N.J. Stat. § 56:10-4.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [the plaintiff] performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also Hanson Engineering, Inc. v. Ascher*, 2008 WL 1782392, *2 (D.N.J. Apr. 16, 2008).  Century 21 has adequately pleaded the first three elements, but not the fourth.  However, because the evidence in the record suffices, albeit barely, to establish that missing element, I respectfully recommend that the court find the defendants liable on each of the contract claims rather than go through the pointless exercise of dismissing those claims with leave to re-plead them in sufficient form.

The record easily establishes the first three elements.  First, the parties entered into a Franchise Agreement under which RBR agreed to operate a Century 21 franchise in Staten Island

from October 1, 1996 through September 30, 2006.  Complaint ¶¶ 17-18.  Second, RBR

materially breached the Franchise Agreement by failing to satisfy its obligations to make certain

payments and report certain transactions.  Complaint ¶¶ 26-28.  As a result, Century 21

terminated the franchise.  Complaint ¶ 29.  Third, Century 21 alleges damages from the

defendants' breach in an amount "not less than" $23,309.04, exclusive of attorneys' fees and

interest.  Complaint ¶ 65; Memo at 14-15.[7]

The same is not true of the fourth element.  Nowhere in the Complaint, or even in the

papers filed with the instant default motion, does Century 21 sufficiently allege or establish that

it performed its own obligations under the Franchise Agreement.  The nearest that Century 21

comes to pleading this element of the contract claims is its general allegation that "[t]hrough its

franchise system, Century 21 markets, promotes and provides services to its real estate brokerage

franchisees throughout the United States."  Complaint ¶ 13.  That allegation says nothing about

whether Century 21 actually made good on the promises it made to franchisee RBR in this case.

To find the performance element established, the court must look elsewhere, and Century

21 has provided no assistance in that regard.  Instead, Century 21 has left it to the court to comb

through the record in search of evidence to support the inference that Century 21 in fact satisfied

its own contractual obligations.  Having undertaken that task, I now conclude that there is enough

---

[7]  As discussed below, Century 21 has not sufficiently demonstrated its damages to a reasonable
certainty for purposes of securing an award in the amount it seeks.  That failure is a consequence
of the rule that a plaintiff may not rely on the defendants' default to establish its damages.
However, Century 21 may rely on the default to establish, for purposes of demonstrating liability,
the proposition that it sustained some damages as a result of the defendants' breach.  As a result,
my conclusion that Century 21 is *not* entitled to the amount of contract damages it seeks is
entirely consistent with the conclusion I reach here that it *is* entitled to a finding of liability,
notwithstanding the fact that a showing of damages is an essential element of a contract claim.

such evidence in the record to afford Century 21 the benefit of that inference. Specifically, Century 21's submissions in connection with the preliminary injunction hearing demonstrate conclusively that, pursuant to its obligations under the Franchise Agreement, it permitted RBR to use its marks, and that it provided RBR with certain advertising and promotional materials. *See* DE 18. To be sure, full performance under the Franchise Agreement required more of Century 21. *See* Franchise Agreement § 6A. ("Franchisor will impart to Franchisee its real estate brokerage, selling, promotional and merchandising methods and techniques associated with the CENTURY 21 System, and shall maintain a staff to give assistance and service to Franchisee."). But it is fair to infer, based on the evidence in the record of at least partial performance by Century 21 and no evidence of breach by that party, that Century 21 performed those additional obligations as well. The defendants have had a full and fair opportunity to challenge that inference, but they have not done so. I therefore conclude that it is fair for the court to find the fourth element of the contract claims established.

In a case where Century 21 was afforded multiple opportunities to shore up its claims prior to a determination of liability, and where Century 21 itself selected the substantive law under which its contract claims would be adjudicated, *see* Franchise Agreement ¶ 25, its failure to adequately plead the basic elements of those claims is remarkable; and would suffice as grounds for dismissal. *See Frederico*, 507 F.3d at 203 (upholding district court's dismissal of plaintiff's breach of contract claim where plaintiff failed to adequately plead each of the required elements, including that she satisfied her own obligations under the contract). Nevertheless, in light of the evidence discussed above, I infer that the defect in Century 21's Complaint was the result of careless drafting rather than of a lack of proof. Rather than require Century 21 to re-

plead its breach of contract claims – and thereby burden the court with further motion practice that would otherwise be unnecessary – I respectfully recommend that the court deem the Complaint amended and find the defendants liable on Century 21's contract claims.

      2.    <u>Damages</u>

As compensation for the defendants' breach of the Franchise Agreement, Century 21 seeks "at least" $23,209.00 in damages, comprised of $20,594.00 in past due payments and $2,715.00 in lost future profits.  Klepar Dec. ¶¶ 20-24; Complaint ¶¶ 52-56, 65.  Once again, the evidence Century 21 has submitted in support of its request is insufficient establish those amounts to a reasonable certainty.  I therefore recommend that the court award Century 21 only nominal damages in the amount of one dollar per claim, for a total of four dollars on its contract claims.

Century 21 relies principally on Klepar's declaration to establish the amounts the defendants owe.  Klepar is undoubtedly qualified to provide information with respect to the defendants' outstanding debt:  she is a Vice-President of Financial Services and Audit for Century 21, she is familiar with Century 21's policies and practices as they relate to the collection of fees from its franchises, and Century 21's financial records relevant to the instant action are under her custody and control.  Klepar Dec. ¶¶ 1-2.  While I credit her assertions, I cannot be reasonably certain that the defendants owe Century 21 $20,594.00 in past due payments and $2,715.00 in lost future profits based solely on her conclusory statements to that effect.  *See* Klepar Dec. ¶¶ 21, 23.

In her declaration, Klepar clearly describes the formulas set out in the Franchise Agreement that Century 21 uses to arrive at the amounts of past due fees and lost future profits

that it seeks. *See* Klepar Dec. ¶¶ 20-23. But her application of those formulas to this case can be no more reliable than the data from which she makes her calculations – and on that score neither her declaration nor anything else in the record provides any information at all, much less enough information to determine damages to a reasonable level of certainty. Thus for example, Klepar explains that

> ... Pursuant to Paragraph 18 [of the Franchise Agreement], following the termination of the franchise, Defendants are required to pay Century 21 all sums then owing. In addition, Defendants are required to pay Century 21 six percent royalty fee, plus two percent NAF contribution, based upon the gross revenue ultimately received from any transaction in process as of the date of termination, and the six percent royalty fee, plus two percent NAF contribution, based upon the gross revenue ultimately received from any referral sent to or recent [sic] from any other Century 21 office prior to the date of termination. Furthermore, Defendants are required to pay to Century 21 the six percent royalty fee, plus two percent NAF contribution based upon the gross revenues ultimately received from each closing of any transaction occurring after termination, but the listing for which was initially procured by Raritan during the time Raritan was operating the Franchise under the Franchise Agreement.

Klepar Dec. ¶ 20 (citation omitted). She then goes on to make the conclusory assertion that "[b]ased on transactions reported by the Defendants, the minimum amount of past due fees is $20,594.00." Klepar Dec. ¶¶ 21. Unfortunately, she does not provide any information at all about those "transactions reported by the Defendants" or the revenues associated with those transactions from which the court can check the accuracy of her calculations. The documentary evidence supporting her declaration likewise fails to provide such information – it merely sets forth Century 21's assertions of the total amount owed.

Klepar is presumably in a position to supply such information, as she necessarily used it in performing her calculations. Moreover, Century 21 is demonstrably able to provide at least such building blocks of its damages case as a detailed statement of the outstanding royalties and

NAF contributions that the defendants owe: it provided just such information in another recent case in this court. *See Century 21 Real Estate LLC v. Paramount Home Sales*, docket number 06-CV-2861 (FB) (JMA), DE 11-9 at 3-4 (E.D.N.Y. July 28, 2006) ("Custom Account Status Report" detailing past due royalty fees and NAF contributions). Thus, Century 21 is manifestly in a position to demonstrate its contract damages to a reasonable certainty – but it has, for reasons known only to itself and its counsel, failed to do so. On such a record, I can recommend that the court award no more than nominal damages of one dollar on each of its four contract claims. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 568-69 (D.N.J. 2003) (nominal damages available for breach of contract in absence of actual damages); Restatement (Second) of Contracts § 346(2) ("If the breach caused no loss or if the amount of the loss is not proved ... a small sum fixed without regard to the amount of loss will be awarded as nominal damages.").

III.     Recommendation

For the reasons set out above, I respectfully recommend that the court enter a default judgment against the defendants on the Lanham Act claim, and that it award Century 21 injunctive relief and litigation costs including reasonable attorneys' fees in the amount of $10,644.84. I further recommend that RBR be required to submit to an audit of its books and records, and that Century 21 be permitted within 30 days of completion of the audit to adduce additional evidence of the amount of the defendants' ill-gotten profits from their unauthorized use of the Century 21 Marks. Any subsequent award based on such profits should be trebled to reflect the defendants' bad faith. Finally, because Century 21 has failed to prove any damages on

the contract claims, I respectfully recommend that the court award only nominal damages in the amount of one dollar per claim, for a total of four dollars, on those causes of action.

IV.     Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service with the court no later than July 31, 2008. Any objections to this Report and Recommendation must be filed with the Clerk no later than August 15, 2008. Failure to file objections within that period, absent an order extending that deadline pursuant to Federal Rule of Civil Procedure 6(b)(1), will waive the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
       July 24, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge